# SUPERIOR COURT

Elizabeth V. Mackie et al.
       vs.        Eq.No.7192
Mackie Worsted Yarn Co.
   et al.

## RESCRIPT

### July 14, 1925

BAKER, J. Heard on bill, answer and proof, and on a petition to adjudge the respondent, Rufus L. Mackie, in contempt.

The court will dispose of the latter question first.

In February, 1925, a restraining order was issued against the said Rufus L. Mackie, ordering him not to interfere with the complainant, Walter D. Mackie in the discharge of his duties in and about the management of the affairs and business of the corporation. Mr. Walter Mackie complains that after the issuing of this restraining order, the respondent, Rufus Mackie, issued certain orders to the employees, in substance, not to pay attention to or take orders from the said Walter Mackie; and also that in May, on two occasions, there was trouble in the office of the company in that the respondent, Rufus Mackie, prevented the complainant, Walter Mackie, from seeing and using certain papers in and about the business of the company.

From the evidence it was apparently the last of these occurrences that caused the petition for contempt to be filed.

The testimony shows clearly that for some time prior to the issuing of the restraining order the respondent, Rufus Mackie, had given orders to cer-

tain of the employees of the company not to pay attention to or take orders from the said complainant, Walter Mackie. While nothing was done to rescind these orders after the restraining order had been issued, the testimony is not so clear that any new orders were issued following the serving of the restraining order in question. The weight of the testimony would seem to show that matters at the mill ran along in about the same condition as they had prior to the issuing of the restraining order. Apparently the complainant, Walter Mackie had no serious fault to find until the trouble occurred in the office in the month of May of this year. The testimony as to what then happened is quite conflicting. The complainant claims that he attempted to look at or use certain papers in connection with shipments of goods and that he was prevented from doing so by the respondent, Rufus Mackie, who assaulted him.

The respondent, on the other hand, contends that he was merely performing his duties in the usual way and that he was doing certain work with the papers in question and with the bookkeeper of the mill when the complainant interfered with him by taking certain papers he was using and with which he had not then finished. He admits that something of a struggle took place and that he took the papers away from the complainant, Walter Mackie, but denies that he committed any assault upon the latter.

The evidence shows very clearly that there was great personal ill-feeling existing between the two brothers. On the whole, the weight of the evidence as to what took place in the office, although there were no direct eye-witnesses of the actual happening tends to support the respondent's story. The court feels that it can not be too careful to see that an order once given is not violated. At the same time it should not seek to be unreasonable or unduly technical in the construction of its orders.

After carefully considering all the testimony bearing on this phase of the case, the court has come to the conclusion that what took place in the office of the mill on the occasion in question was more in the nature of an unfortunate personal quarrel between the two brothers, growing out of the extreme tension existing in their relations, rather than any attempt, intentional or otherwise, on the part of the respondent, Rufus Mackie, to violate the order of the court. On all the facts presented, therefore, the court does not feel that it should adjudge the latter in contempt.

The bill of complaint in this case asks that a receiver be appointed of the respondent company; that certain stock be placed in the hands of trustees; that certain injunctions be issued, and for other relief.

The matter was heard at great length and a large number of exhibits were introduced to assist the court in making its findings. It would not be of any particular advantage to go over this testimony or these exhibits in detail at the present time.

The facts proved show substantially that the husband of the complainant, Elizabeth V. Mackie, had for a long time prior to his death been engaged in the manufacture of yarn with certain other men; that a short time prior to his death, through some disputes or troubles, he, being a minority stockholder in the company, was deprived of his offices in that company. It clearly appears that from that time on there was more or less talk by the members of the Mackie family about starting a yarn mill of their own. Mr. Mackie's death then occurred. At this time the complainant, Walter Mackie, was the superintendent of a mill in Camden, New Jersey. The respondent, Rufus Mackie, was the manager of a mill in Pittsfield, Massachusets, and the respondent,

William Mackie, was living at home with his mother, the complainant, Elizabeth V. Mackie. There are also in the family several daughters, some of whom are married. The complainant, Walter Mackie and the respondent, Rufus Mackie, were executors of their father's estate, which apparently was left entirely to his wife, the complainant Elizabeth V. Mackie. After Mr. Mackie's death conferences in regard to the starting of a mill continued and talks were held by the brothers and by other members of the family in New York and in Providence. Finally it was decided that such a mill be built, the brothers, Walter and Rufus, to give up their positions and to take part in the management of the new concern. The complainant, Elizabeth V. Mackie, agreed that from her husband's estate she would allow the sum of $100,000 to be taken for the purposes of assisting in building and equipping the mill. She also put in about $15,000 for the youngest son, William. The complainant, Walter Mackie, put in about $15,000, and the respondent, Rufus Mackie, approximately $16,000. The parties had at this time an attorney, who had been the family attorney for some time, and various conferences and consultations were held in regard to the starting of the mill. The testimony is somewhat conflicting as to the details of some of these talks and conferences, but in the main there is not much disagreement. It was finally determined that a corporation be organized. This at first had to be done hastily because of the necessity of signing certain building contracts, and the respondent, Mackie Worsted Yarn Company, was thereupon created. Later, after various talks and conferences, the charter was amended so as to create two classes of stock: Class A stock, which was non-voting and which was the stock held by the complainant, Elizabeth V. Mackie, but which shared with the Class B stock in the dividends;

and Class B stock, which was held by the three sons and was the stock which had the voting power. It is clear that this corporation was organized, as Mrs. Mackie says, as a memorial to her husband and for the purpose of perpetuating the Mackie name in the yarn business, and for the further purpose of setting up the three sons in a business of their own. It is evident that Mrs. Mackie's aims were of the very highest.

The testimony shows that in due time the corporation started business. The respondent, Rufus Mackie, who was the eldest son, was president and general manager. The respondent, William Mackie, was treasurer. The complainant, Walter Mackie, was secretary, and all three were directors. During all this period the parties received advice of counsel and there is not much question in the mind of the court but what everything was fully understood by all the parties interested. For a short time things went smoothly. Financially, apparently, the corporation has been extremely successful from the very beginning. Before long, however, it was evident that the two brothers, Rufus and Walter, could not get along together very well. Their personal relations became very strained. They did not speak to each other, and matters in that connection have gone steadily from bad to worse until the present litigation has developed.

It is claimed on the part of the complainants that when this corporation was organized there was a general understanding that all three sons were to be equal in the management of the company and that affairs were to be so arranged that no two of the sons could deprive the third of his position with the company. There is more or less testimony relating to talk about a pooling agreement, or an agreement whereby the Class B stock should be placed in the hands of trustees to be voted along the lines indi-

cated above. The complainant, Elizabeth V. Mackie, testifies that she placed her investment in this corporation with the idea that all three boys should remain in it and operate it. Certain evidence introduced on behalf of the respondents tends to show that the arrangements was that Rufus Mackie, who apparently is a very able yarn manufacturer, should be the president and manager of the corporation, and that the others would be, perhaps, more or less subordinate to him in that regard, although the complainant, Walter Mackie, is also a successful yarn manufacturer.

It is clear from the proof that all the members of this family, with perhaps the exception of Mrs. Mackie, are rather high tempered.

It appears as matters have gradually developed that the two respondents, Rufus and William, are apparently are working together congenially, but that they can not work with the complainant, Walter Mackie. That is a settled fact apart from whatever the cause may be. It is clear that it is the intention of the two respondents, Rufus and William, if not interfered with, to vote out the complainant, Walter Mackie, as secretary and a director of this company. Walter and his mother contend that this should not be done. As far as corporate organization and voting power goes, there is no doubt but what the respondents can do this. The complainants, however, contend that by reason of the understanding and arrangements that this should be a family concern, and taking into consideration the purposes for which it was or-

ganized, the respondents should not be allowed to carry out their evident intent and that if the other relief asked for can not be given, a receiver should be appointed.

In regard to the matter of creating a voting trust or pooling the Class B stock, the complainants practically admit that the testimony in the case would not warrant the court in making such an order. The evidence does show that there were from time to time talks about pooling the Class B stock. The first suggestion as to this came from the attorney for the corporation. There is a conflict in the testimony as to the object and purpose of this pooling. The respondents contend that it was merely to keep the control in the Mackie family, whereas the complainants contend that it was to prevent any two of the brothers joining against the third, which situation has now arisen. Be that as it may, however, it is clear that this matter never progressed beyond preliminary stages or more or less informal talks. No definite agreement or understanding was ever reached by the parties as to the terms of any voting trust or pooling agreement. There is nothing clearly defined in this connection which the court could order carried out.

It was suggested that the Class A stock, held by the complainant, Elizabeth V. Mackie, be given a vote. There are two difficulties with this. In the first place, there is no testimony showing any understanding or agreement of this kind. In fact, the evidence shows clearly that only Class B stock was to have a vote. Further, the court

believes that in view of the corporate organization of this concern it has no power to arbitrarily give a certain portion of the stock a vote.

The question of relief, therefore, comes down to the matter of whether or not the court should appoint a receiver. In this connection the complainants present a very able and ingenious argument and one which appeals a good deal to the sympathy of the court. In substance it is that the complainant, Elizabeth V. Mackie, is really the party most interested here; that the greater part of the investment is hers, and that the testimony shows clearly that it was her desire and intent that all three of her sons be connected with this yarn mill, which was to be a family affair and in memory of her husband; that this being so the three sons are virtually trustees for her, and that if two of the men vote the third from his office, the purposes of the corporation and the purposes of Mrs. Mackie will not be carried out, and that to prevent any such happening the court should place the affairs of the company in the hands of a receiver.

The court has the greatest sympathy for the position of the complainant, Mrs. Mackie, in this matter. She has acted in a most laudable and generous manner, and it is a great pity that her three sons can not bury their differences and conduct the business as she would desire it conducted. Much as the complainants' argument appeals to the feelings of the court, it can not, however, close its eyes to the fact that the business here is being done under the form of a corporation, the terms of whose charter and the arrangements of whose organization were fully known

to all the parties. Furthermore, the respondent, Rufus Mackie, has invoiced some $16,000 of his own money. The law seems to be well settled that in order to find any such trust or trust relationship as the complainants are here contending for, the evidence as to the terms and creation of such a relationship must be clearly defined.

The court feels that the evidence here does not sustain the complainants' position in that regard. The complainants are asking for the appointment of a receiver under the general equity powers of the court and apart from statute. If the court was satisfied that the complainant, Elizabeth V. Mackie's investment was in danger financially, it would not hesitate to appoint a receiver, but it is clear from the evidence that just the reverse is the case. Apparently the mill has been extremely successful from the beginning. It is not enough to say that it might be more successful if the three brothers worked in harmony. The complainants did introduce certain testimony in regard to expense accounts and the like, which they claim show that the funds of the corporation are not being properly handled. The evidence shows, however, that the salaries paid are very small and the expense charges above referred to seem to the court to be only the legitimate accounts of a company of this kind. There is nothing in the testimony which would tend to show that the corporation funds are being misapplied or wasted.

Under all the facts in the case, therefore, and on the law as it appears to be, the court finds that the complainants are not entitled to the relief they ask for.

The prayer of the bill is denied and the bill is dismissed.

For Complainants: Huddy, Emerson & Moulton.

For Respondents: Tillinghast & Collins.